Coming in, oral argument and absolution 15 minutes per side, presently for the pundit panel. May it please the court, counsel, your honor, I would ask for three minutes rebuttal time. Alright. May I proceed, your honor? Yes, you may proceed. This case turns on the holding of the Kentucky Supreme Court in the case of Jones v. Petunias Cole. I come to the court, I look around, there's lots of cases, but I have in my hand the insurance policy and the Jones case, and I think that those are what decide this case. In Jones, the Kentucky Supreme Court reversed what had been the law of the land, and in 1991, the court held that if there is a late notice, that there's no longer a forfeiture, and what an insurer must then show if there's a late notice in an insurance policy is that there's prejudice. This is the law of Kentucky. Therefore, the issue before this court is whether this Jones case would carve out an for this RLI excess policy, and in short, the Kentucky Supreme Court would not carve out such an exception. RLI argues that yes, the RLI policy is somehow different or special and would be subject to an exception to Jones' general rule, and the answer is it is not special and is not Jones was decided in 1991, and in that case, as in all these notice prejudice cases, the insured failed to give notice in a timely manner, and before that An occurrence policy, was it not? Yes, Your Honor, it was, but I think We're talking about a claims-made policy Well, the answer is yes, Your Honor, but we're talking about an RLI excess policy, and the issue before this court is to look and see whether the holding of Jones would be any different in this RLI policy. What I know that RLI does is try to categorize this as a claims-made and reported policy, but what we need to do as the court held in the IMG case is look at this policy and decide what does this policy say when you compare it to Jones? Does it make a difference whether it's just claims-made or claims-made and reported? It does make a difference. I want to say that, once again, what this court should do is look at the policy itself, at the insuring clause, and then this notice condition, but it would make a difference. It's not the case here. This is an excess policy, and the reason that we call it a claims-made policy is because the underlying policy, which it follows, was a Darwin, which was a claims-made, but that wasn't a claims-made and reported policy. It's peculiar to me that Kentucky common law, you say the weight of the authority. Is Jones, would you say Jones depicts the general authority in Kentucky that insurers always must show prejudice where there's been a lapse by the insured? Well, what Jones says is if there is a condition that has failed to be met, and it goes by the general principles of contract law, that if you have a breach, people breach contracts. We do that, and what used to be is the insurer would say, oh, no, we're going to forfeit that coverage. But what Jones says, no, no. If there is a breach, then we're going to look and see if it's material, and if it's not material, then what we're going to do is- We're going to discount the policy language. No, Your Honor, I think the discount is too strong. What we're going to do is look to the policy language. If there is a breach, and in this case, we were late in the notice under the RLI policy, what is the effect of that? And under Jones, the effect is the insurer must show notice- Always. Always. Okay, because that's not what I- I mean, when you read the brief of your learned brethren here, that's not quite so. Well, I will point to the cases in Kentucky. Well, first, I know the Court has read this, but Jones is so strong that that's the reason I bring it up here. It says in Jones, absent language in the contract clearly spelling out the meaning and parameters of prompt notice and automatic forfeiture consequences, the reach and term of the consequences are vague. The rule of the policy of ambiguity, which is subject, applies to this contract. And so- You're talking about contracts. Well, part of the contract that has to do with an insurance company is what risk does the company assume when it writes the policy? And then the claims made, an insurance company assumes a risk that ends on a date certain, the end of the policy. In an occurrence, that's not the case. So I can understand the prejudice rule if the claim doesn't have to have occurred during the policy term. But here you want us to rewrite a policy, rewrite the risk that an insurance company has assumed, aren't you? No, Your Honor. Enlarge the risk. It's an enlargement, isn't it? No, Your Honor. In fact, what you're pointing to is a claims made policy and this underlying policy, the Darwin policy, which paid its money. And there was no question about that. The Darwin policy was a claims made for a specific period. But your question, Judge, I think really goes to what they're talking about, a claims made and reported. And so in this policy period, you have two things that occur. A claim is made and it has to be reported. That's not what happened in this case. And, in fact, RLI wants to talk about the Darwin policy, but what the court should focus on, as said in the IMG case, is what does the RLI policy say. And when you look at the RLI policy, you look to the insuring clause. And under Kentucky law, the insuring clause is important. I'd cite to the court, to the St. Paul case, which is a Kentucky Supreme Court, that says that the insuring clause expresses Does the RLI encompass the Darwin terms, the Darwin policy? It did, Your Honor. And that's what the Darwin policy paid. There's no question that the We understand that, but we still are looking at the terms then of the RLI, which happened to overlap with the terms of the Darwin policy, right? Yes, Your Honor. And so what I suggest the court do is look at the Jones case and then look at the excess clause and look for here, because what you have to do under Jones in order to forfeit coverage, that's what was happening here was we were going to forfeit coverage. And if you're going to forfeit coverage, then what you have to do is in unequivocally conspicuous, plain, and clear manifestation of the company's intent to exclude coverage. Only that will defeat that expectation. And what you have to do is not only tell what the notice is, 30 days, but you also have to promptly warn of a forfeiture, and that's the problem in this. So when you look at the insuring clause, all the RLI policy says in the insuring clause is that it will happen when it does during the policy period that was complied with and when the underlying insurance has paid its full amount. That didn't even happen for another year after this. And then it says, subject to the terms, except as otherwise provided. And that's why I brought this chart here is when you look in the insuring agreement, there is nothing that warns the hospital or anyone in this insuring clause, which is where the rubber hits the road, as Goodyear case says, that you're going to lose coverage if you're a minute late, if you're a day late. And so RLI knows that. You argue that this is a policy that you're pointing to is simply a claims-made policy, and that's the position you take in your brief, correct? Yes, Your Honor, it's the Darwin policy. Okay, but you don't clearly say why Darwin believes this is a claims-made policy. Could you explain that? Why Darwin believes it's a claims-made policy? That's your position. Well, under the insuring agreement, if you look at the insuring agreement, it specifically says that it is for claims made during the policy period. But in that Darwin insuring agreement, there is nothing that also has to be noticed or reported during that period. That's the difference here. This is a claims-made. It's during the policy period. But the thing that RLI ignores is that there is no requirement that it be reported in that policy period, not in the Darwin because it was Darwin-paid. And then when you come to the RLI, this is the part that RLI wants to do. It hangs its hat on this clause, which is Section 10. So if we decide this is a claims-made and reported policy, then your argument sort of doesn't hold up too well. I'll have to say that it's no. Then the whole issue of prejudice comes in in terms of whether there was no prejudice, whether that was satisfied. If this court decides that this is a claims-made and reported policy, I'll have to be frank. I don't know how you find that from the language of the Darwin policy, which paid. And then when you look at the policy of RLI, what they say is accept as otherwise provided. And then you come to this Section 10, which is their notice. This is their notice. They have put it in there. And remember under Kentucky law, if there's any ambiguity or any confusion about which notice provision should be used, then it's construed in favor of coverage and in favor of us. And this policy condition. Wait a minute. I'm not following you on that. Why is that? Well, the policy, the Darwin, excuse me, the RLI policy says that accept as otherwise. But in the notice problem, it's construed in your favor. That's what I'm. What I understand the court to be struggling with is that there was an argument by RLI that I think was abandoned in this. But essentially, certainly the district court said that somehow the hospital had to comply with not only the Darwin notice and give RLI notice under the Darwin policy, but also under the RLI policy. And Judge Bunning got that wrong. The only notice requirement that is required is the one that RLI set forth. But if there is a confusion, and I think Judge Bunning was confused on it, it has to be construed in favor of the hospital. In favor of the insured. In favor of coverage. In favor. As typically. Yes, Your Honor. And so when you come down to it, the reason I brought this chart is because you look. This is what they hang their hat on. When you cut through it all, this section 10 is what the RLI hangs its hat on. And it hangs its hat on this clause right here. But when you read it, it doesn't really talk about notice of a claim. If this is, as they argue, the essential part of this policy, how come no place in the RLI policy does it ever say that you have to give notice of a claim? It doesn't. It just says notice of anything. What if it was a change of address? Would RLI argue you didn't give us notice of a change of address, or we added a trustee? Of course not. And if, to emphasize this point, the very next year for this same follow form excess policy, this was taken out, and the notice provision then was one that simply said you have to give us, as soon as you can, notice of exhaustion of the underlying limit. Let's see if you're following the RLI argument. As I understand, RLI would say that this claims made and reported policy because it followed the Darwin policy and that RLI was required to conform to the primary policy. If the policy provision was that RLI would conform to the Darwin policy, and it would then give notice in relation to that policy, wouldn't, isn't it the fact that there's a clause saying that RLI would conform to the Darwin policy and that would include any notice provision of the policy? Are you taking that into account in your argument? Yes, Your Honor, I am. Absolutely. If I could respond to it. I'm out of time, but I'd like to respond to that. Because that's, the first thing is that the insuring clause of the RLI says except as otherwise provided. Here it is as otherwise provided. This is what the court should look to, and this is just a condition. But to go to, that's the reason why RLI is trying to go back to the Darwin policy, and they're trying to somehow pigeonhole this in and to say it is a claims made and reported. But even if you look at the Darwin policy, it is not a claims made and reported. It just says it's for claims that are made within this finite period. And then just like I'm arguing the Jones, there is a separate section. It's an endorsement that amended a condition that said just like this, that you have to give notice within 60 days of the end of the policy. So the Darwin policy is simply a claims made policy, not a claims made and reported. And it's important to RLI to try to pigeonhole it there because they have to run away from the express language of their endorsement. Because this endorsement right here, if you look at it, if we even got a refund of any premium under their theory, if we got a $10 refund back from Darwin and failed to report that $10 refund back, then their position is we lose. They try to pigeonhole a notice of a claim under item B, but that has no greater dignity under this clause than a $10 refund of premium. That's why the Jones is so important. And it says that in order to cause a forfeiture, you have to show that there was substantial prejudice. And there was no substantial prejudice as shown by the very next year. This policy completely did away with this notice requirement. Same policy, same premium. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. My name is Michael Proe. I represent RLI Insurance Company. I'll respond to Mr. Bentley's points shortly. My opening comment is RLI seeks only here the enforcement of plain contract language from its contract with Lasham Hospital Corporation. The language is simple. If you could indulge me, Counsel, I'd love to hear your response. Sure. I'd really like timely. It would help us to think about that little point there about your $10 refund, any number of things that could trigger, under those terms, what would seem an absurd forfeiture of coverage. Right. And I think we have a couple things to say there. First, as I believe one of Judge Clay's early questions raised, this policy is a follow-form excess policy. There's nothing exotic or unusual about that. It adopts the terms and conditions of the primary policy, except to the extent that terms are further restricted or amended in the excess provisions that follow. And therefore, the claim notice provisions of the Darwin policy are adopted into the RLI excess policy. There's nothing unusual about that. They're represented by Marsh. They know the way insurance works. We took the deposition of their corporate designee. They understand how follow-form policies work. Why wouldn't the absurdity that he poses cause us to look askance? Yeah. Let me address that. Well, first, the issue, I mean, Mr. Bentley's premise was this clause somehow contradicts the claim notice provision of the primary policy. Well, it doesn't. They're separate requirements. The claim notice is set forth in the terms and conditions of the primary policy that's followed. This provision has to do with notifying the excess carrier when something affecting the primary coverage happens. Is that what it says? Well, it's what the four provisions say. They set forth the four things. It might behoove you to put that back. Right. It might help both of you. Oh, it's fine. No, I was only turning to it because it was up earlier. I can certainly pull it. But, I mean, let's have it for the benefit of the Court. Right. And it's interesting here. So the notice of claim is the separate requirement set forth in the primary policy adopted into the excess policy. That's why it's a claims made and recorded policy. I'm still going to ask you about the 10 bucks. Right. No, and that's fine. Have you answered that yet? You're talking a lot, but I didn't hear an answer. It's fine. That's the first answer. That's not this case. The second answer is notice by the. I mean, why not? It's a deal in a hypothetical. That's fine. A return premium could reflect something that affects the risk the excess carrier has underwritten. For example, in an excess policy where you follow form, a return premium may reflect a change in the coverage that's occurred on the primary policy. And, therefore, the excess carrier is potentially affected. Now, it may or may not be. You would want the notice. The idea of $10, that's too, it doesn't suggest a change in the risk. It's never going to happen. It's a scenario that's a reduction to the absurd because you're not, if you say if there's a $10 premium, do I have to notify the excess carrier? Your response is a change in, if there were a refund, it suggests there also were circumstances that would be meaningful. There could reflect a change in the primary coverage. It's material to the excess carrier. It is fair for an excess carrier to say, tell me if one of these four things happens. Tell me if there's been an alteration or cancellation of the underlying insurance because I follow form to this because you may come after me. It might be fair to say tell us, but the point your opponent is making is it might be fair to say it'd be nice and fair to tell us, but to lose your coverage, that's the... And here there's two answers to that. First, this is not the entirety of the obligation that Ashland Hospital Corp has to make a report of this claim. The report of the claim is set forth in the primary Darwin policy, and in fact they gave notice to Darwin on the last possible day, so they knew full well the reporting obligation of the Darwin policy, and they knew our policy followed form to it, yet they did not provide us a report of the claim. So that's point one on that. Point two on this is... You think that was just oversight? Or are you suggesting there's something purposeful? We never got an explanation, so all we're left is to surmise. What do you surmise? Well, I'm in an absence... It's not part of the record. I'm just trying to figure out who thinks... Right. If we had to surmise, I mean one possible explanation, just trying to think it through and connect the dots, would be that this subpoena comes in. That's a big problem in July of 2011. They're looking at renewal at the end of September, early October of 2011. If they rock the boat on renewal and jeopardize the renewal, they may well have determined they would have difficulty placing alternative coverage because they would have to disclose the claim, and so they set it aside. This company has a routine practice that they testify to. Every MedMal claim that comes in, every premises claim that comes in, they immediately tender. They immediately tender. It's a sound business practice, their corporate designee said, to tender claims immediately. This company? Yes, Ashland Hospital Corporation. Even though they have a million-dollar SIR in their MedMal CGL policy, they tender every claim because they know it's a sound business practice. This gigantic, problematic claim comes in, and they don't tender it. They don't even ask Marsh to tender it or ask Marsh, do we have any coverage? So one possible explanation would be you don't want to rock the boat at renewal. You want to get your policies renewed. For some reason, that has taken the claim off the track. It isn't getting immediately tendered. However, they send it to outside counsel in November of 2011 when there's still plenty of time to tender it. Whatever material they sent outside counsel, they could have just sent us. Outside counsel writes a letter on absolutely the last day to satisfy the reporting requirement of the Darwin policy. They hand-deliver on day 90, after expiration of the policy period, hand-deliver a letter to Darwin giving their first notice of the claim. Even then, outside counsel, Ashland, nobody sends it to RLI. Is there an explanation? I haven't gotten one. I've had witnesses under oath. I've asked them questions every way I could think of, and I don't have an explanation. I know the case law addressing as soon as practicable looks to whether there's some excuse or some reason, some justifiable reason why they can't comply with the contract. Here, for all I can tell, this is a sophisticated policyholder represented by Marsh. They know the terms of their contracts. For all I can know, it's a conscious decision because here they are with outside counsel representing them, giving notice on the last possible day to Darwin. We follow form to Darwin, and they don't give notice to us. Are they thinking they can argue this Jones idea later, that they can just ignore their contractual obligation? Why don't we talk about Jones now? Absolutely, and I'm happy to. I'm certain that that requires... Well, I find it interesting because I heard first that Jones is a categorical general rule, and it's Kentucky law, and it doesn't matter. Then I heard an answer to a later question that whether this is claims made or claims made and reported matters. I suppose those two arguments may actually be somewhat contradictory. If Jones states a general categorical rule, it states a general rule, but the fact is it doesn't. This court itself, the Sixth Circuit, has recognized in One Beacon v. Chialoso that Jones states an exception to the general rule, that the general rule is conditions precedent and reporting requirements are enforced. Jones itself marches through a series of factors that are particular, as the Jones court says, to the present case, including that it's a mine owner's policy statutorily mandated with an injured worker that the... Has Jones been criticized? I realize from your brief, both briefs, that it seems like the weight of authority in Kentucky upholds contractual conditions, conditions precedent. But is Jones a one-off? Has it been criticized? What's the... I wouldn't say it's been criticized. I think within its scope, within its realm, Jones is consistent with cases that have come down all over the country. There's nothing unusual about Jones or about Kentucky law. Courts around the country, and I think one of the cases cited, a 2015 Connecticut case, tried to collect authority, maybe 38 or 40, depending on how you interpret it, cases of states have a case like Jones in an occurrence or accident-based policy where you have just a general provision. I mean, what Jones talked about was a CGL policy, commercial general liability, where after the loss there's a post-loss condition that says you must notify promptly and nothing else. It's an ambiguity. That's one of the four factors. Right. They do find, because they say the policy does not either explicitly say you must do this to have coverage, and it does not warn that there's a consequence of no coverage or of not having coverage if you fail to do so. There are several differences here. First of all, we do specify, as did Darwin, exactly what timing is required for the reporting. This isn't just notify promptly, do your best. The Darwin policy says in no event later than 90 days after expiration of the policy. Our policy says in no event later than 30 days after notifying the primary. We do specifically spell out exactly what is meant by the timely reporting, and part of that goes to the risk assumed in a claims made or claims made and reported policy, which is that you know about the claim within a short period of time after the closure of the policy period so that you don't have these long tail claims that environmental and construction defect and toxic tort cases we've seen where we're still litigating over stuff that happened in the 1960s and 1970s. That was the whole reason for the claims made policies. You're setting time limits on the reporting. That's one big distinction from Jones. Second is, in both the reporting requirement of the Darwin policy and here, it does say, and here's the Darwin policy, as a condition precedent to any right to payment in respect of any claim, the insurer must give the insurer a written notice as soon as practicable and in no event later than 90 days. So there is an express warning, an express notice. This is a condition precedent to any right to payment in respect of any claim. It is telling them the consequence of noncompliance. You have no right to payment. It's right there. Any insurer, any layperson reading that language would read it that way and to say that Ashland Hospital Corporation, which is a big company that enforces contracts every day of its existence, can ignore a clause like that and sit on a claim and not report it as required is to nullify contract law. And the RLI policy likewise says the insured shall, as a condition precedent to exercising their rights under this policy. Again, you are being told up front, if you don't meet this, you may not exercise your rights under this policy. That's not Jones. Jones just says, if you have a claim, you must notify us promptly. And the Supreme Court of Kentucky said, well, in light of that language, it's vague as to what promptly means and it's vague as to whether there's any consequence if you don't do so. And I think that's one big distinction in Jones to this case. There are other distinctions involving the nature of the relative risks of an occurrence policy and a claims made or claims made and reported policy. Again, the timing of the claim and of the reporting to the carrier being an essential term. It's interesting on the notice to the primary carrier issue, that is, even if you set aside the whole claims made and claims made and reported question of following form to the Darwin policy, which I think it just plainly does and we're within a vast sea of authority supporting us on that. Just looking at the notice to the primary carrier requirement that you needed to tell the excess carrier within 30 days of notice to the primary carrier, this case is controlled by Union Planners Bank, a decision by this court in 2007 in a slightly different policy context, but it interpreted a very similar provision that said when you give notice to a primary carrier, you must immediately notify the excess carrier. In that case, this court held that whatever immediately means, it does not mean 25 days. There was a 25-day delay in that case between notifying the primary and notifying the excess. Three $25 million excess policies fell on that because this court said notify immediately does not mean wait 25 days and did not require prejudice to be shown. Said that in claims reporting and claims made type policies, prejudice is not required. In that case, Union Planners Bank, everything happened within the policy period. There was no question of first year of coverage, second year of coverage, straddling. The claim comes in and one year is reported. None of that. This is all within the policy period. They enforced a primary carrier notice clause much like this. If anything, less certain because it said immediately and did not set forth a date requirement. It just said immediately and enforced it. Again, I think this is governed by the claims made and claims made and reported case law that we've discussed. Jones is distinguishable for several reasons. We've discussed the notify promptly language versus the precise language here. I think in addition, even setting that issue aside, the primary notice clause tracks the holding of this court in Union Planners Bank. I think it's essentially indistinguishable. Obviously, there's distinctions in every case. There's different language and different policies and so on. But as far as the purpose of putting the excess carriers on notice when you notify a primary carrier, that's exactly the interest that's protected by this clause too so that we don't have what happened here which is the largest claim in the history of the company comes in. They put Darwin on notice on the last day and they leave us in the dark for six months before we get a two-sentence letter that tells us nothing. And that's Ashton Hospital flouting its contractual obligations. I just want to follow it through for a moment. I see you. Yes. I'm sorry. I was just wondering, had you had notice, what options do you claim you would have had? Right. And on that issue, because of the terms on which this was briefed, the question of what prejudice could you establish if you had to establish it had not been developed. In fact, the discovery had been out on that. There had been some delay in discovery due to some motions. And that was something that was teed up and was going to go forward on developing the evidence of notice. So I don't want to speculate or evidence of prejudice. So I don't want to speculate here as to what that would show. And your time's up. Right. And I'm happy to respond to any other questions, of course. Well, I know your time's up, but do you know of any cases that say that the notice prejudice rule applies to claims made and reported policies? I am unaware of any case holding that. Certainly at the appellate level of precedent-making courts, we've cited scores of Supreme Court, Circuit, and Intermediate Court of Appeal decisions to the contrary, saying that the notice prejudice rule does not apply on claims made and reported policy. I am not aware of a single appellate decision to the contrary, other than, let me qualify, the Maryland Supreme Court, where there is a specific statute. Well, no, we're talking about Kentucky, and I couldn't find any. Yeah, no. No, no, there's not. And I think here that's where, just tying it back into before, you know, is Jones stating a general rule, or is Jones stating an exception to the general rule? This court has already opined in Chial Solo that it's stating an exception to the general rule, and in any event, this is a question of enforcing a contract against Ashland Hospital Corporation with very clear and very explicit reporting and notice requirements. All right, thank you. Thank you. I guess you have three minutes. The thing I want to point out and make sure the court is clear about is that the Darwin policy, the notice requirement, was separate from the insuring clause. And therefore, under the Darwin policy, there is the notice prejudice rule. I think the court would... I don't understand what you're saying there. You're saying the notice requirement is separate from the policy. It's separate from the insuring. I'm not following you. Thank you, Your Honor. I certainly misspoke on that. It's separate from the insuring clause. When you look at the insuring agreement under the Darwin policy, which is where the rubber hits the road, this is the essential term. When you look at that insuring agreement, what it says is that it is for a claim made during this period. Then there is a separate condition in the Darwin policy that says you have to give notice to Darwin. And that's the thing that's so perplexing about how Judge Bunning found it. We gave notice to Darwin as was required and Darwin paid the money. When you read the Darwin requirement of notice, it applies only to Darwin. It doesn't apply to RLI. They say, well, it's a follow form. Who are we supposed to give notice to? How do you get around that the language in the Darwin policy expressly states this is a claims made and reported policy and then the RLI policy explicitly adopts the conditions of the Darwin policy? Well, it goes back to my statement in Kentucky. If there's any ambiguity in the policy and if you look at the policy... What I just said doesn't constitute any ambiguity. That's the reason why I'm going to run over here to the judge and show you the ambiguity that's in the Darwin policy because what he points to is one section of the thing that says it's a claims made and reported. But when you look at the part that's not of that same policy, it just says it is a claims made policy. It's on... There's something in the policy that's not of the policy. I'm really not following what you're saying there. When you look at the Darwin policy... Within the policy, it's contradictory. It's contradictory. Thank you, Your Honor. On the place where it talks about the deck page, it talks about it. Right there it just says it's a claims made policy. It's later in the boilerplate where they say this is a claims made and reported. But when you look at the words, the actual insuring clause, what it says is it's just for claims made during the policy and then there is a separate section condition just like in the Jones case that says you have to give notice. And Darwin paid. There's no question about that. Your point is give notice to whom? Right. You give notice to Darwin, which we did. Which was handled. Which was handled and there's no question about it. Darwin now tries to piggyback that and even though the policy clearly says the notice must be given to Darwin, they say you should give it... But all this tells you when you give notice to Darwin, thou shalt give notice to RLI or RJI. Right. That's what this says. That's right. Why don't you countenance that? I do countenance it. The issue before the court is what happens if you don't. You ask why we didn't. And the issue before the court is what would the Kentucky Supreme Court do and the answer is it would say show us prejudice and if you can't show us prejudice and it's in the same thing as the $10 refund. It's in the same place and if they wanted to clearly and explicitly say you're going to forfeit coverage, they should have done that. They did not. That's what Jones says. He says we told you clearly 30 days, 10 days, but when you read Jones, it says what you have to say clearly is a forfeiture and the only case, and I'm going to stop, the only case in Kentucky that has ever deviated from Jones was the Hiscock case and that is the case where Judge Bunning said look at... Wrap things up, counsel. I was waiting for you to finish but there is no finish so... All right. For the foregoing reasons, Your Honor, we'd ask that you overturn Judge Bunning's decision, deny our realized motion for summary judgment, grant our motion for partial summary judgment, and if there is any doubt in this court's mind, we'd ask that you refer it to the Supreme Court. Thank you, Your Honor. Case is submitted.